UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

REGENCE BLUESHIELD, *et al.*,

Plaintiffs,

v.

BNY MELLON BANK, N.A.,

Defendant.

Case No. C09-0618RSL

ORDER DENYING MOTION FOR A TEMPORARY RESTRAINING ORDER

## I. INTRODUCTION

This matter comes before the Court on plaintiffs' motion for a temporary restraining order requiring defendant BNY Mellon Bank, N.A. ("Mellon" or "defendant") to (1) terminate plaintiffs' participation in the securities lending program and terminate all existing loans of plaintiffs' securities to third parties in the Program, (2) return all of plaintiffs' securities in the Program, (3) refrain from requiring a collateral insufficiency to be funded by Regence, (4) refrain from crediting to Regence the redemptions by the investment funds that result in illiquid or otherwise non-tradeable lots of one or more securities, (5) refrain from holding all cash collateral (and related investments) held in respect of loans of Regence's securities, and (6) refrain from continuing to invest cash

ORDER DENYING MOTION FOR A
TEMPORARY RESTRAINING ORDER - 1

collateral on behalf of Regence, prior to resolution of this lawsuit.

The Court heard oral argument in this matter on May 12, 2009. For the reasons set forth below, the Court denies the motion.

## II.  DISCUSSION

### A.  Background Facts.

Mellon has served as the custodial bank for seven of the plaintiffs since as early as 1996 pursuant to their respective custodial contracts. Mellon is the custodian for approximately $250 million of plaintiffs' collective assets. Plaintiffs have also agreed to participate in Mellon's securities lending program (the "Program") to offset the costs associated with having a custodial relationship with a bank. As part of the Program, Mellon loans plaintiffs' securities to creditworthy third parties, who are required to post collateral of not less than the value of the loaned securities (the "cash collateral"). As of April 30, 2009, Mellon had loaned plaintiffs' securities totaling approximately $195 million to third parties. The cash collateral is invested in a separate fund; the fund at issue in this case is the Mellon GSL DBT II Collateral Fund Series of the Mellon GSL Reinvestment Trust ("DBT II Fund"). Regence earns a return on the invested cash collateral.

During the recent economic credit crisis, one of the structured investment vehicles in the DBT II Fund, referred to as SIGMA, began to fail. Mellon created a new series of DBT II called the Mellon GSL Reinvestment Trust II (the "Sigma Liquidating Fund") and transferred all of the SIGMA notes held by DBT II into that series. To provide for some liquidity, Mellon divided the remaining assets of DBT II into two categories (1) "cash/overnight assets," which included cash and any assets having a maturity of one business day or less, and (2) the "terms assets," which included all remaining assets of

DBT II. The term assets were transferred in kind from DBT II to the newly created DBT II Liquidating Fund.

On October 1, 2008, Regence gave written notice to defendant to suspend its participation in the Program and sought the return of plaintiffs' securities. In response, defendant advised Regence that it had three options: (1) immediately withdraw its securities, which would result in realized losses and less than 100% return of the value of its securities, (2) take a *pro rata* share of the DBT II Fund (a "vertical slice") and pay for a proportionate share of the associated unrealized loss of the DBT II Fund, or (3) remain passively in the Program and over time reduce the amount of securities on loan until the markets normalized or all the securities had been returned. Plaintiffs chose to do nothing at the time. On November 19, 2008, Mellon advised Regence of its proportionate share of the collateral cash deficiency. On April 14, 2009, Regence sent a second notice to suspend plaintiffs' participation in the Program and demanded the return of its securities. The parties conducted a telephone call, then Mellon followed up with a written response that led plaintiffs to believe that Mellon would not be returning its securities and would instead liquidate a vertical slice of the collateral pool. Plaintiffs filed this motion for a TRO on May 7, 2009. Currently, the cash collateral Mellon holds for plaintiffs consists of (1) units of DBT II, (2) units in the Sigma Liquidating Fund, and (3) units in the DBT II Liquidating Fund.

**B.     Analysis.**

    **1.     Applicable Standards.**

The Supreme Court recently explained, "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities

1 tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., __ U.S. __, 129 S. Ct. 365, 374 (2008). Following *Winter*, the Ninth Circuit has explained, "To the extent that our cases have suggested a lesser standard, they are no longer controlling, or even viable." American Trucking Associations, Inc. v. City of Los Angeles, 559 F.3d 1046 at *14-15 (9th Cir. 2009).

In determining the appropriate standard, the Court must also consider the type of immediate relief sought. "A prohibitory injunction preserves the status quo." Stanley v. Univ. of S. Cal., 13 F.3d 1313, 1320 (9th Cir. 1994). In contrast, "[a] mandatory injunction goes well beyond simply maintaining the status quo *pendente lite* and is particularly disfavored. When a mandatory preliminary injunction is requested, the district court should deny such relief unless the facts and law clearly favor the moving party." Id. (internal quotation marks and citations omitted). In this case, plaintiffs are requesting affirmative relief: the return of their securities. Requiring that Mellon do so would alter, not preserve, the status quo. Therefore, the relief that plaintiffs seek is subject to heightened scrutiny by the Court. See Dahl v. HEM Pharms. Corp., 7 F.3d 1399, 1403 (9th Cir. 1993) ("'[M]andatory preliminary relief' is subject to heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party.") (citing Anderson v. United States, 612 F.2d 1112, 1114 (9th Cir. 1980)).

### 2. Likelihood of Success on the Merits.

Plaintiffs contend that they are entitled to a TRO because Mellon violated the parties' contracts by refusing to return plaintiffs' securities when requested in violation of the parties' contracts. Mellon does not dispute that the loans are terminable at plaintiffs' election and that once plaintiffs give notice, Mellon is required to return assets in some form to plaintiffs. The issue is whether Mellon is required to return plaintiffs' securities

ORDER DENYING MOTION FOR A
TEMPORARY RESTRAINING ORDER - 4

in the same form as plaintiffs lent them to Mellon. That issue is a close call. Section 11(a) of the 2006 version of the Securities Lending Contract requires,

> The Client may, in its sole and absolute discretion, direct the Lending Agent to terminate any loan of the Client's securities at any time and for any reason in which event the Lending Agent shall, promptly, upon receipt of notice thereof from the Client, take all steps necessary to cause the termination of such Loan and the return of the loaned securities to the Client's account within the standard settlement period for such securities.

Section 13 of the 1999 agreement provides that upon termination, the lending agent "shall promptly take all reasonable actions to terminate all securities loans then outstanding." Section 9 of the same agreement provides that if the agreement is terminated and the loaned securities are not returned for any reason, then Mellon must "promptly replace the loaned securities" or if it is unable to purchase the securities on the open market, credit the client's account with the value of the same. Those provisions seem to contemplate a return of plaintiffs' actual securities.

In response, defendant argues that plaintiffs agreed to bear any losses to its securities. Although defendant's point is correct, and indeed, undisputed, it does not resolve the issue of what form the returned assets must take. Defendant also argues that its Mellon GSL Reinvestment Trust Declaration of Trust document and the "constituent documents"[1] regarding the liquidating funds permit it to impose withdrawal restrictions and require in-kind redemption. On one hand, the securities lending contracts do not incorporate the trust agreement or the constituent documents. Nor do they explicitly permit Mellon to unilaterally amend its contractual obligations. On the other hand, plaintiffs agreed that their money could be invested in the DBT II Fund, which is a trust. According to the trust document,

---

[1] Various amendments to the Trust document permit the fund to redeem a client's interest in part or in whole for cash or in-kind.

> Notwithstanding any other provision in this Section 3.5 to the contrary, in accordance with Section 4.4 hereof, the Trustee may in its discretion (or, in the event that authority has been delegated to the Investment Manager pursuant to the Investment Management Agreement, then only at the direction of the Investment Manager) suspend the right of Beneficial Owners to require the Trust to redeem Units.

McDermott Decl., Ex. 2 at Section 3.5(b). However, the import and applicability of the trust document is unclear. If defendant files a dispositive motion, it should clarify those points and the interaction between the trust document and the securities lending contracts. Although the language in the securities lending contracts certainly seems to favor plaintiffs, they have not shown that the facts and the law *clearly* favor them despite the language in the trust documents. Therefore, they are not entitled to mandatory injunctive relief.

### 3. Likelihood of Irreparable Injury.

Plaintiffs must also show a likelihood of "irreparable injury" in the absence of injunctive relief, which includes injuries that cannot be fairly compensated by monetary damages or other forms of relief available at law. See, e.g., Winter, 129 S. Ct. at 374; eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006) (explaining that plaintiff "must demonstrate . . . that remedies available at law, such as monetary damages, are inadequate to compensate for that [irreparable] injury"); Rent-a-Center v. Canyon Television & Appliance, 944 F.2d 597, 603 (9th Cir. 1991). In this case, plaintiffs have failed to show a likelihood of irreparable injury because the alleged harm is economic: the potential loss of funds. Plaintiffs contend that the harm may ultimately be difficult to measure because if defendant retains their securities, it could continue to make investments in unsound ways, resulting in immeasurable losses. However, during oral argument, defense counsel clarified that Mellon is willing to remit to plaintiffs a vertical slice of the collateral pool, minus the approximately $10.5 million in losses incurred. If

plaintiffs accepted the vertical slice, they would be free to liquidate those assets or hold them as they choose. Once Mellon remits plaintiffs' share of the collateral pool, the remaining losses are measurable and the responsibility for shouldering them can be readily adjudicated.

Plaintiffs also contend that they are being deprived of their property right in their securities. The alleged property, however, is a fungible economic asset. If plaintiffs choose to accept the vertical slice, then they can enjoy the use of their money prior to an adjudication on the merits. Moreover, pursuant to the securities lending agreement, the borrowers have property rights in the securities until the loans are terminated and the securities are returned. Accordingly, plaintiffs have not shown a likelihood of irreparable injury.

### 4. The Public's Interest and the Balance of Equities.

Finally, plaintiffs must show that the balance of equities tips in their favor, and that an injunction is in the public interest. See, e.g., Winter, 129 S. Ct. at 374. In making this determination, the Court must determine whether the public interest favors the moving or nonmoving party. See Sammartano v. First Judicial Dist. Court in & for the County of Carson City, 303 F.3d 959, 974 (9th Cir. 2002). In this case, if plaintiffs' motion were granted, defendant would be required to remit all of plaintiffs' securities to its account, without accounting for any losses plaintiffs' have incurred. To do so, Mellon contends that it would have to sell plaintiffs' *pro rata* portion of the funds, at a loss, to pay for the collateral owed to the third party borrowers, raise additional cash to make up the difference between the value of Regence's *pro rata* portion and the collateral owed to the borrowers and recall Regence's securities on loan to the borrowers. Mellon argues that those actions could unfairly force the remaining participants to absorb plaintiffs' risk

ORDER DENYING MOTION FOR A
TEMPORARY RESTRAINING ORDER - 7

associated with the securities lending.  Furthermore, granting this motion could encourage other investors to seek to exit the Program, causing a potential run on the funds. Certainly, similar rushes to withdraw capital have destabilized numerous other funds and in some cases, the banks themselves have failed.  The resulting harm to third parties in the funds and to the public could be widespread.

Plaintiffs argue that defendant's argument is misplaced because Mellon could simply provide some of its own cash to stabilize the fund.  That assumes, however, that Mellon has large amounts of ready cash, which is unsupported and unlikely in these economic times.  Furthermore, because plaintiffs can recoup the vast majority of their capital by taking the vertical slice, they have not shown that the equities favor granting an injunction.

At the end of the day, plaintiffs are seeking extraordinary equitable relief: an affirmative injunction and the return of a large sum of money, on a TRO motion without a full hearing of the merits.  Plaintiffs, however, have not satisfied their heightened burden of showing that they are entitled to such relief or that they cannot wait the relatively short time needed for a full adjudication on the merits.[2]

### III.  CONCLUSION

For all of the foregoing reasons, Court DENIES the motion for a TRO (Dkt. #2).

DATED this 13th day of May, 2009.

*MWS Lasnik*
Robert S. Lasnik
United States District Judge

---

[2] During oral argument, defendant stated that it would agree to an expedited resolution of this matter.  After defendant has answered the complaint, the parties may file a stipulation to facilitate that goal if warranted.

ORDER DENYING MOTION FOR A
TEMPORARY RESTRAINING ORDER - 8